IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFREDO BECERRA-PAREDES,

       Petitioner,

v.                                     No. 1:26-cv-0549 JB/DLM

KRISTI NOEM, et al.,

       Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Alfredo Becerra-Paredes's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Becerra-Paredes challenges the legality of his continued detention, asserting that DHS is detaining him under the wrong statutory provision in violation of the Immigration and Nationality Act (INA) and that his confinement without any individualized custody determination violates the Due Process Clause of the Fifth Amendment. He also filed a Motion for Temporary Restraining Order and Preliminary Injunction (TRO). (Doc. 2.) Having reviewed the record and relevant law, the undersigned recommends that the Petition be **GRANTED** and the TRO be **DENIED AS MOOT**.[1]

I.      **Factual and Procedural Background**

Petitioner Alfredo Becerra-Paredes is a citizen and national of Mexico. (Docs. 1 at 8; 2 at 5; 9 at 2 (citing Doc. 9-1); 9-2 at 1.) He entered the United States without inspection in or about 2008 and has since lived in the interior. (*See* Docs. 1 at 6, 8; 9 at 2; 9-2 at 1.) Petitioner has no criminal history. (*See* Docs. 1 at 8; 9-2 at 2.)

On or about January 9, 2026, Immigration and Customs Enforcement (ICE) officers

---

[1] On February 25, 2026, Senior United States District Judge James O. Browning entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 5.)

encountered and apprehended Petitioner as part of "Operation Metro Surge." (*See* Docs. 1 at 6; 9 at 2 (citing Doc. 9-2).) Petitioner was subsequently served with a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled . . . ." (Docs. 1-1 at 2; 9-1 at 1.)

Since his arrest, Petition has remained continuously detained at the Cibola County Correctional Center in Milan, New Mexico (Doc. 1 at 8–9; 1-1 at 2; 2 at 10; 9-1 at 1.) DHS records reflect that Petitioner's only known immigration history is a voluntary return issued by Border Patrol on May 5, 2008. (Doc. 9-2 at 2.)

Petitioner asserts that he sought a custody redetermination hearing, but the Immigration Judge declined jurisdiction based on DHS's classification of him under § 1225(b). (*See* Doc. 1 at 12.) Respondents contend that Petitioner "did not proceed with the custody redetermination hearing under § 1226," citing "Exhibit D." (Doc. 9 at 6.) There is no "Exhibit D" attached to the response brief.

On February 24, 2026, Petitioner filed the present Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) He raises two claims: (1) that DHS is detaining him under the wrong statutory provision in violation of the INA; and (2) that his continued detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment. (*See id.* at 12–15.) Petitioner requests immediate release or, in the alternative, an order requiring DHS to provide him a bond hearing under § 1226(a) within seven days. (*Id.* at 15–16.)

Petitioner also filed a Motion for Temporary Restraining Order seeking to prevent his transfer outside the District and to require a prompt custody hearing. (*See* Doc. 2.) The Government Respondents filed their response on March 10, 2026, arguing that Petitioner is properly detained

under § 1225(b)(2)(A) as an "applicant for admission," and that he failed to exhaust administrative remedies.[2] (*See* Doc. 9.) Petitioner did not file a Reply.

The matter is fully briefed and ready for disposition.

## II.    Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation omitted). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

---

[2] Warden Respondents did not file a separate response. This is consistent with the standard practice in these § 2241 immigration-detention cases, where wardens of private detention facilities either expressly join the federal Respondents' arguments or do not appear at all. Courts in this District have treated the federal Respondents' position as applying equally to the warden in such circumstances. *See Duhan v. Noem*, No. 2:26-cv-0019 MIS/JFR, 2026 WL 266619, at *1 n.2 (D.N.M. Feb. 2, 2026) (citations omitted). The Government Respondents' brief similarly states that their arguments apply to the warden, notwithstanding a reference to the Torrance County Detention Facility rather than Cibola County Correctional Center. (*See* Doc. 9 at 1 n.1.)

### III.    Discussion

Petitioner argues that his continued detention is unlawful because DHS is detaining him under the wrong statutory provision and because his prolonged confinement without any individualized custody determination violates the Due Process Clause. (*See* Doc. 1 at 12–15.) Respondents maintain that Petitioner is properly detained under § 1225(b)(2) as an applicant for admission and therefore subject to mandatory detention without bond. (*See* Doc. 9 at 1–2.)

For the reasons explained below, the undersigned concludes that § 1226(a)—not § 1225(b)(2)—governs Petitioner's custody. Because Petitioner has been detained for months without any individualized custody review, his continued detention is unlawful under the INA and the Fifth Amendment.

### A.    Detention Under § 1225 vs. § 1226

The detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is whether Petitioner—who entered the United States in or about 2008 and lived openly in the interior since entry—is properly detained under § 1225(b)(2), a provision that applies only to noncitizens "seeking admission," or under § 1226(a), which governs the detention of noncitizens already present in the United States and which provides for the possibility of a bond hearing. *See id.* at 297, 303. For the reasons explained below, the undersigned concludes that § 1226—not § 1225—governs Petitioner's detention.

Several courts in this District have recently examined the interaction between §§ 1225 and 1226 in cases involving noncitizens who entered unlawfully years before their later encounters with immigration authorities. Respondents cite *Singh v. Noem*, No. 2:25-cv-1110 JB/KK, 2026 WL 146005 (D.N.M. Jan. 20, 2026), in support of their argument that § 1225(b)(2) applies to Petitioner. (*See* Doc. 9 at 14–17.) Because *Singh* is the only decision from this District that

Respondents invoke in their statutory analysis, and because it addresses the same statutory provisions at issue here, the undersigned addresses it directly.

In *Singh v. Noem*, the court addressed the statutory basis for the federal government's detention of Singh, a noncitizen who entered the United States unlawfully in September 2023 and was re-detained in September 2025 while traveling through a United States Border Patrol checkpoint in New Mexico. *Singh*, 2026 WL 146005, at *35. The court explained that Singh was never lawfully admitted or paroled into the United States, and therefore he is deemed an "applicant for admission." *Id.* at *14 (citing 8 U.S.C. § 1225(a)(1)). Despite arguments that Singh's subsequent detention must fall under § 1226(a), entitling him to a bond hearing, the court concluded that Singh's detention was governed by § 1225(b)(2), which mandates detention and does not require a bond hearing. *See id.* at *33.

The *Singh* court began by analyzing whether § 1225(b)(1), the expedited removal provision, applies to Singh. *Id.* at *35. Although Singh had been present in the United States for less than two years at the time of his re-detention and had not been admitted or paroled, the court found that § 1225(b)(1) did not apply because immigration officers charged him under § 1182(a)(6)(A)(i), rather than the specific inadmissibility grounds, §§ 1182(a)(6)(C) or (a)(7), required for expedited removal. *Id.* The court noted that DHS's choice of inadmissibility ground appeared intentional and that, regardless of Singh's factual eligibility, the statutory prerequisites for § 1225(b)(1) were not satisfied. *Id.*

Having determined that § 1225(b)(1) did not apply, the court turned to § 1225(b)(2), which functions as a catchall provision for applicants for admission not covered by § 1225(b)(1). *See id.* at *18, *34. The court emphasized that § 1225(b)(2) applies only to aliens who are both "applicants for admission" and "seeking admission," and it rejected the government's argument that the two

terms are synonymous. *Id.* at *35. The court also rejected the contention that "seeking admission" applies only to arriving aliens at the border. *Id.* Instead, the court interpreted "seeking admission" as an active process that can occur inside the United States when an alien who has not been admitted seeks lawful status—"an alien must request admission into the United States." *Id.*

Applying that interpretation, the court concluded that Singh was "seeking admission" because he filed an asylum application after entering the United States unlawfully. *Id.* After entering unlawfully on September 15, 2023—but before his second and operative detainment on September 4, 2025—Singh submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degreading Treatment or Punishment. *Id.* at *36. The court further observed that Singh's pending asylum proceedings demonstrated that he had been found to have a credible fear of persecution, which placed him squarely within the detention framework of § 1225(b). *Id.* The court relied on 8 C.F.R. § 235.3(c)(2), which provides that asylum applicants who have been found to have credible fear "shall be detained" under § 1225(b). *Id.* The court thus concluded that Singh's asylum application did not shift him into § 1226(a) detention but instead reinforced that § 1225(b)(2) governed his custody. *Id.*

The court also noted that immigration officers determined Singh was not "clearly and beyond a doubt . . . entitled to be admitted," a statutory requirement for detention under § 1225(b)(2). *Id.* at *35 (citing 8 U.S.C. § 1225(b)(2)). Singh admitted to unlawful entry, had a pending removal case, and sought relief from removal; thus, the court concluded that he could not meet the "clearly and beyond a doubt" standard. *Id.* Ultimately, the court held that Singh was properly detained under § 1225(b)(2), not § 1226(a). *Id.* Because § 1225(b)(2) mandates detention

without the possibility of a bond hearing, the court denied Singh's request for release or a bond hearing. *Id.* at *33.

To begin, Petitioner in this case, as in *Singh*, entered without inspection and was never admitted or paroled. (*See* Doc. 1 at 6, 8, 11.) He is therefore an "applicant for admission" under § 1225(a)(1). *See Singh*, 2026 WL 146005, at *14 (discussing 8 U.S.C. § 1225(a)(1)).

Second, § 1225(b)(1) does not apply here. Petitioner is currently detained based on his January 2026 arrest. (Docs. 1 at 6, 10–11; 9 at 2; 9-2 at 1–2.) By that time, he had been in the United States for almost two decades, placing him well outside the two-year statutory window during which DHS may designate certain noncitizens for expedited removal under § 1225(b)(1)(A)(iii). *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Moreover, as in *Singh*, DHS charged Petitioner under § 1182(a)(6)(A)(i), rather than charging him under § 1182(a)(6)(C) or § 1182(a)(7), the only inadmissibility grounds that trigger § 1225(b)(1). (*See* Doc. 9-1 at 1.) Thus, the statutory prerequisites for § 1225(b)(1) are not met.

Third, because Petitioner has not taken any action that constitutes "seeking admission," § 1225(b)(2) does not apply. As explained in *Singh*, "seeking admission" requires an active request for lawful admission—"an alien must request admission into the United States." *Singh*, 2026 WL 146005, at *35. Petitioner here has made no such request. Unlike in *Singh*, the record contains no fact or allegation that Petitioner has filed an asylum application, a visa application, or any other affirmative request for lawful admission. He is defending against removal, but he is not affirmatively seeking admission. Respondents' position—that all non-admitted noncitizens are "seeking admission"—is the precise interpretation *Singh* rejected. (*See* Doc. 9 at 14–17.) *See also Singh*, 2026 WL 146005, at *35 (noting that "[t]his argument improperly equates the term 'applicant for admission' and 'alien seeking admission'").

Petitioner notes that he intends to pursue Non-Lawful Permanent Resident (LPR) Cancellation of Removal under INA § 240A(b). (*See* Doc. 1 at 8–9.) The record, however, contains no evidence that he has filed an application for cancellation, and a stated intention to seek such relief does not amount to "seeking admission." Moreover, as *Singh* explains, "seeking admission" requires an affirmative request for lawful entry or lawful status. *See* 2026 WL 146005, at *35. Non-LPR cancellation is the opposite: it is a defensive form of relief available only to noncitizens already in removal proceedings. *See* 8 U.S.C. § 1229b(b) (relief available only after DHS has initiated removal proceedings, confirming its defensive nature).[3] Thus, even if Petitioner ultimately files for cancellation, that action would not transform him into an alien "seeking admission" for purposes of § 1225(b)(2).

Because neither § 1225(b)(1) nor § 1225(b)(2) applies, detention defaults to § 1226(a). This is the statutory structure *Singh* adopts: § 1226(a) governs detention of noncitizens who are not subject to either § 1225(b)(1) or § 1225(b)(2). *Id.* at *33–36; *see also Jennings*, 583 U.S. at 287–89 (explaining that §§ 1225(b) and 1226 create separate detention tracks and that § 1226(a) governs when § 1225(b) does not apply).

Under the framework articulated in *Singh*, Petitioner's detention is governed by § 1226(a), not § 1225(b)(2). Petitioner is therefore entitled to an individualized bond hearing before a neutral decisionmaker.

Similarly, in *Cortez-Gonzalez v. Noem*, where a noncitizen had lived in the United States for nearly her entire life with no criminal history and was later arrested in the interior and charged under § 1182(a)(6)(A)(i), the court rejected DHS's attempt to classify her detention under § 1225(b)(2)(A). *See Cortez-Gonzalez v. Noem*, 811 F. Supp. 3d 1287, 1295–97 (D.N.M. 2025).

---

[3] INA § 240A(b), codified at 8 U.S.C. § 1229b(b). *See Velasco v. Holder*, 736 F.3d 944, 945 (10th Cir. 2013) ("§ 240A of the INA, codified at 8 U.S.C. § 1229b").

The court explained that § 1225(b)(2) applies only when a noncitizen is both an "applicant for admission" and "seeking admission," and that long-term residents who have taken no affirmative steps to request lawful admission are not "seeking admission" within the meaning of the statute. *Id.* at 1296–97. Because the statutory prerequisites for § 1225(b)(2) were not met, the court held that detention defaulted to § 1226(a). *Id.* at 1297. The same reasoning applies here: Petitioner has lived in the United States for years, was charged under § 1182(a)(6)(A)(i), and has made no affirmative request for admission. As in *Cortez-Gonzalez*, DHS's reliance on § 1225(b)(2) is inconsistent with the statutory text, and § 1226(a) governs his detention.

**B.    Due Process Claim**

Petitioner also argues that his continued detention without any individualized custody determination violates the Due Process Clause of the Fifth Amendment. (*See* Doc. 1 at 13–15.) Because the undersigned concludes that § 1226(a) governs Petitioner's detention, the Court must also consider the due process that accompanies detention under that provision. Section 1226(a) itself contemplates individualized custody determinations, and Respondents acknowledge that if § 1226(a) applies, "the appropriate relief would be a bond review . . . ." (Doc. 9 at 2.) This concession aligns with the consistent holdings of courts in this District: when a noncitizen is detained under § 1226(a), due process requires an individualized custody determination.

As a preliminary matter, the undersigned notes that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).

Courts in this District have repeatedly applied these principles to hold that noncitizens detained under § 1226(a) are entitled to an individualized bond hearing. In *Cortez-Gonzalez*, the court concluded that because § 1226(a) controlled the petitioner's detention, she was "entitled— as a right—to an individualized bond hearing[,]" and that her continued detention without such

review constituted "an ongoing violation of her right to due process." 811 F. Supp. 3d 1287, 1298 (D.N.M. 2025) (citing *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1240–41 (D.N.M. 2025)). Similarly, in *Gonzalez Ramos v. Dedos*, the court concluded that a noncitizen who had lived in the United States for decades was not "seeking admission" under § 1225(b)(2)(A), and therefore that § 1226(a) controlled; because of that, the petitioner was "entitled to an individualized bond hearing before an [Immigration Judge,]" at which the government bore the burden of justifying continued detention. No. 1:25-cv-0975 MLG/KRS, 2025 WL 3653928, at * 4–5 (D.N.M. Dec. 17, 2025) (citations omitted). And in *Munoz Teran v. Bondi*, the court again held that § 1226(a) governed the detention of a long-term resident arrested in the interior, and ordered a bond hearing because the petitioner had been detained "without an opportunity to post bond or request a conditional release . . . ." No. 2:25-cv-1218 KWR/SCY, 2026 WL 161527, at *1, 6 (D.N.M. Jan. 21, 2026).

These decisions reflect a uniform principle: when § 1226(a) applies, due process requires an individualized custody determination before the government may deprive a noncitizen of physical liberty. *See Velasquez Salazar*, 806 F. Supp. 3d at 1241 (citing *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 784–85 (E.D. Mich. 2025)) ("[T]he due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ.").

Petitioner has never received such a determination. ICE arrested him in the interior of the United States and has detained him without any showing that he poses a danger or flight risk. The government's failure to make that threshold determination—and its continued detention of Petitioner without a bond hearing—creates precisely the "risk of an erroneous deprivation" that due process forbids. *See Lopez-Romero v. Lyons*, No. 2:25-cv-1113 MIS/JHR, 2026 WL 92873, at *6 (D.N.M. Jan. 13, 2026) (considering *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Petitioner's continued detention without any individualized custody determination therefore violates the Due Process Clause.[4]

### C.    Disposition of the Habeas Petition

For the reasons explained above, Petitioner is detained under 8 U.S.C. § 1226(a) and has never received the individualized custody determination that the statute and the Due Process Clause require. Habeas relief is therefore warranted. The undersigned recommends that the Court order DHS to provide Petitioner with a prompt bond hearing before a neutral Immigration Judge. Consistent with *Castillo v. De Anda-Ybarra*, the undersigned does not recommend altering the default burden of proof applicable at a § 1226(a) bond hearing. *See* No. 2:25-cv-1074 JB/JFR, 2026 WL 370497, at *41–42 (D.N.M. Feb. 10, 2026).

### D.    Disposition of Petitioner's TRO

In his Motion for Temporary Restraining Order and Preliminary Injunction, Petitioner seeks to prevent his transfer and to obtain a prompt bond hearing before a neutral adjudicator. (*See* Doc. 2 at 1–2, 12.) Because the relief he seeks in the TRO is duplicative of the relief he seeks in the Petition, granting the Petition will moot the TRO.

### E.    Administrative Exhaustion

In their March 10, 2026 Response, Respondents contend that Petitioner "fail[ed] to exhaust [his] administrative remedies" by "not proc[eeding] with a custody redetermination hearing . . . ." (*See* Doc. 9 at 6.) That argument is misplaced. Respondents cite "Exhibit D," but no such exhibit

---

[4] Petitioner includes a brief Administrative Procedure Act (APA) theory within Count II, asserting that DHS's continued detention without a bond hearing is "arbitrary, capricious, and not in accordance with law." (*See* Doc. 1 at 13–15.) He does not plead a standalone APA claim. Respondents address the APA theory as if it were an independent cause of action. (See Doc. 9 at 7–8.) To the extent Petitioner seeks relief under the APA, courts in this District have held that an individualized detention determination—such as DHS's classification of a detainee under § 1225(b)(2) or its refusal to provide a bond hearing—is not "final agency action" within the meaning of the APA. *See Gamez Lira v. De Anda-Ybarra*, No. 1:25-cv-0885 WJ/KK, 2025 WL 2581710, at *4 (D.N.M. June 6, 2025) (citing *Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007); 8 U.S.C. § 1252(a)(1)). Accordingly, the APA provides no independent basis for relief.

appears in the record.[5] The only relevant attachment—Exhibit C—reflects a "master immigration hearing" scheduled for March 31, 2026, more than three weeks after Respondents filed their response. (*See* Doc. 9-3.) Respondents cannot fault Petitioner for failing to attend a hearing that had not yet occurred, and in any event a master calendar hearing is not a custody redetermination hearing.

Moreover, exhaustion is not required where the agency has predetermined the outcome or where the administrative process is incapable of providing the relief sought. Neither the INA nor § 2241 expressly imposes a statutory exhaustion requirement for noncitizens challenging the legality of their detention. *See Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at 1–2 (D.N.M. Nov. 14, 2025) (explaining that § 2241 imposes no statutory exhaustion requirement and that exhaustion is futile where IJs lack authority to grant a bond hearing). Although the Tenth Circuit applies an exhaustion requirement in § 2241 cases, it recognizes a "narrow exception" where exhaustion would be futile. *See Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010)).

To be sure, here, exhaustion is futile. Petitioner alleges—and Respondents do not dispute—that he has never been afforded any opportunity to seek bond. (*See* Doc. 1 at 12.) ICE explicitly informed him that he was "not eligible for bond[,]" and the custody determination section of the I-213 reflects that "[n]o bond was recommended . . . ." (*See* Doc. 9-2 at 3.) Petitioner further alleges that the Immigration Judge declined to conduct a custody redetermination hearing based solely on DHS's classification of him under § 1225(b). (*See* Doc. 1 at 12.) Respondents' own briefing confirms that they maintain noncitizens DHS has classified under § 1225(b)(2)(A) are subject to mandatory detention and therefore not entitled to bond hearings under § 1226(a). (*See* Doc. 9 at

---

[5] Respondents also devote several pages of their response to arguing that Petitioner cannot obtain habeas relief based on an allegedly unlawful arrest. (*See* Doc. 9 at 10–14.) Petitioner raises no such claim.

16–19.) Petitioner also alleges that immigration judges nationwide have been instructed to treat as binding the Board of Immigration Appeals (BIA) decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and to deny bond requests from individuals DHS has placed in § 1225(b)(2)(A) proceedings. (Doc. 1 at 12.) Under that framework, any request by Petitioner for a bond hearing would have been automatically denied for lack of jurisdiction.

Courts in this District have consistently held that *Hurtado* renders exhaustion futile in precisely these circumstances. *See, e.g.*, *Pu Sacvin*, 2025 WL 3187432, at *2 (exhaustion futile where IJ lacked jurisdiction under *Hurtado*); *Francisco v. Dedos*, No. 1:25-cv-1229 MIS/GJF, 2026 WL 145456, at *7–8 (D.N.M. Jan. 20, 2026), *R&R adopted*, 2026 WL 300319 (D.N.M. Feb. 4, 2026) (same). As these courts have recognized, requiring a petitioner to pursue a remedy the agency has already declared unavailable would serve no purpose and would only delay judicial review. Because the administrative process could not have provided Petitioner any avenue for release, habeas review is both appropriate and necessary.

> **F.    Effect of the *Maldonado Bautista* Declaratory Judgment**

Petitioner also argues that, as a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, he is entitled to release or a bond hearing under 8 U.S.C. § 1226(a). (*See* Doc. 1 at 2–7 (discussing *Maldonado Bautista v. Santacruz*, No. 5:25-cv-1873 SSS/BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), *reconsideration granted in part*, *Bautista v. Santacruz*, 813 F. Supp. 3d 1075 (C.D. Cal. 2025), *and amended and superseded on reconsideration*, *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom.*, *Maldonado Bautista v. Noem*, No. 5:25-cv-1873 SSS/BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025)), 13.) The declaratory judgment in *Maldonado Bautista* held that class members are "detained under 8 U.S.C. § 1226(a) and thus may not be denied consideration for release on bond under § 1225(b)(2)(A)." (*See id.* at 3 (citing *Maldonado Bautista*, 2025 WL 3289861, at *11).)

13

So far, courts in this District have declined to treat *Maldonado Bautista* as controlling in habeas cases brought by detainees confined in New Mexico. In *Aguilar v. Bondi*, the court held that *Maldonado Bautista* "has no impact" on the habeas analysis because habeas jurisdiction lies only in the district of confinement. *See Aguilar v. Bondi*, No. 1:25-cv-0996 KWR/KK, 2026 WL 84520, at *6 n.3 (D.N.M. Jan. 12, 2026) (citation omitted); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). In *Garcia Sanchez v. Noem*, the court expressly declined to engage *Maldonado Bautista* because § 1226(a) independently governed the petitioner's detention. *See Garcia Sanchez v. Noem*, No. 1:25-cv-1219 KG/JFR, 2026 WL 266464, at *1 n.1 (D.N.M. Feb. 2, 2026). And in *Ramirez v. Noem*, the court found *Maldonado Bautista* "persuasive" but not binding and resolved the statutory question through an independent analysis of §§ 1225 and 1226. *See Ramirez v. Noem*, --- F. Supp. 3d ----, No. 2:26-cv-0063 SMD/GJF, 2026 WL 381869, at *6–7 (D.N.M. Feb. 11, 2026).

Consistent with these decisions, the Court should not treat *Maldonado Bautista* as binding in this habeas action. The statutory question presented here—whether Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a)—is resolved by the statutory text and the case law in this District. Because § 1226(a) governs Petitioner's detention independent of *Maldonado Bautista*, the Court need not reach the effect of the declaratory judgment.

### G.    EAJA Attorney Fees

Petitioner's prayer for relief in habeas petition includes a request for "attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412[.]" (Doc. 1 at 16.) The Equal Access to Justice Act (EAJA) provides that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the

14

position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The Tenth Circuit has confirmed that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

At this stage, however, Petitioner's request is premature. A party becomes eligible to seek EAJA fees only after entry of a final judgment, and an EAJA motion does not ripen until the time for appeal has expired. *See* 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991). Because no final judgment has been entered, Petitioner is not yet a prevailing party for EAJA purposes.

Even if the request were ripe, the undersigned would recommend denying EAJA fees because the government's position was substantially justified. "The test for substantial justification is . . . 'one of reasonableness in law and fact.'" *Garcia-Lopez*, 2026 WL 524082, at *35 (quoting *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007)). The government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Id.* (quoting *Hackett*, 475 F.3d at 1172.) A position may be substantially justified even if it is ultimately incorrect. *Id.* (quoting *Hackett*, 475 F.3d at 1172). And substantial justification exists where reasonable people could disagree about the appropriateness of the government's action. *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Applying that standard, Judge Browning held that the government's position was substantially justified where the relevant legal question was unsettled, courts across the country had reached conflicting conclusions, and at least one Court of Appeals had adopted the government's view. *Id.* at *36. The same is true here. The central statutory question—whether

15

detention in these circumstances is governed by § 1225 or § 1226—remains unsettled, and courts have reached conflicting conclusions. As the court in *Garcia-Lopez* points out, several district courts have adopted the government's interpretation. *See, e.g., Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132 (D. Neb. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133 (S.D. Cal. 2025); *Mejia Olalde v. Noem*, No. 1:25-cv-0168 JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025). And the Fifth and Eighth Circuits have likewise embraced the government's view. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). At the same time, the Seventh Circuit has reached the opposite conclusion. *See Castanon-Nava v. DHS*, 161 F.4th 1048 (7th Cir. 2025). Given this unsettled landscape, the government's position had a reasonable basis in law and fact.

Accordingly, even if Petitioner were eligible to seek EAJA fees at this stage, the undersigned would recommend denying such fees because the government's position was substantially justified.

## IV.    Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED**, because Petitioner's continued detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

2. Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) should be **DENIED AS MOOT** in light of the full relief recommended herein.

3. The Court should **ORDER** Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge within seven days

16

of the Court's order, and to file a status report within ten days confirming that the hearing has occurred.

4. If no bond hearing is held within seven days, the Court should **ORDER** Petitioner's immediate release unless and until the Government demonstrates that continued detention is lawful under 8 U.S.C. § 1226(a).

5. The Court should retain jurisdiction to consider any future motion for attorney's fees and costs under the Equal Access to Justice Act.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE